D. C.]                             Syllabus.

# IN RE WILLARD.

PATENTS; PATENTABILITY; EVIDENCE; ADMISSIONS.

1. While commercial success of a device does not constitute satisfactory evidence of patentability, it will be considered in doubtful cases, and especially will evidence be considered which is to the effect that the applicant's invention supplies a real need which no other invention having the same purpose has accomplished.

2. A statement in an application for a patent for an improvement in oil well apparatus, which is merely a statement of broad and general principles that are known and utilized in the drilling of oil wells, does not constitute an admission by the applicant that his precise combination was old and well known when he devised it.

3. The fact that a new combination involves the use of some elements, the subject-matter of previous inventions by others, does not in and of itself destroy the patentability of the combination, provided the new combination is productive of a different result in the combined elements from that given by the separate parts.   (Citing *Re Eastwood*, 33 App. D. C. 291.)

4. Where there is doubt as to the patentability of an invention, it will be resolved in favor of the applicant for a patent.   (Citing *Re Eastwood*, supra, and *Re Harbeck*, 39 App. D. C. 555.)

5. An applicant for a patent whose invention related to improvements in oil well apparatus, and particularly to apparatus utilized in drilling oil wells, was *held* entitled to a patent for having accomplished a new combination, not of a character requiring mere mechanical skill to accomplish, although in it were to be found features covered by other patents.

No. 1048.   Patent Appeals.   Submitted November 15, 1916.   Decided January 2, 1917.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting claims in an application for a patent.

*Reversed.*

The facts are stated in the opinion.

*Mr. H. S. Hill* for the appellant.

*Mr. William R. Ballard* for the Commissioner of Patents.

Mr. Justice SIDDONS, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of this appeal in the place of Mr. Chief Justice SHEPARD, delivered the opinion of the Court:

This is an appeal from a decision of the Assistant Commissioner of Patents, affirming a decision of the Examiners in Chief, affirming a decision of the Primary Examiner, rejecting the appellant's claims for letters patent.

The claims which have been rejected are as follows:

"1. The combination, with a sectional well casing, of a circulating head and closure for the upper end of the casing, comprising two separable members, and securing means for detachably uniting the members; one of said members comprising an annulus, the other of said members comprising a cap or plate through which the drilling string is vertically reciprocated, and said securing means comprising swinging bolts pivotally connected with one of said members and adapted for connection with the other of said members; and a collar or joint detachably applied to the annulus and applied to the upper end of the casing exteriorly of both and constituting a securing means.

"2. The combination, with a sectional well casing, of a circulating head and closure for the upper end of the casing, comprising two separable members, and securing means for detachably uniting the members; one of said members comprising an annulus adapted for connection with the casing, the other of said members comprising a cap or plate, through which the drilling string is vertically reciprocated, and said securing means comprising swinging bolts pivotally connected with said annulus and adapted to enter recesses in the periphery of said cap or plate, nuts being provided to hold said bolts within said recesses; and a collar or joint detachably applied to the annulus and applied to the upper end of the casing exteriorly of both and constituting a securing means.

"3. The combination, with a sectional well casing, of a closure

for the casing, comprising an annulus adapted to be connected with the casing by a casing joint, and of the same internal diameter as the casing, a cap or plate adapted to be fitted to and seated upon the annulus and through which the drilling string is reciprocated, and securing means detachably uniting the annulus and the cap or plate.

"4. The combination, with a sectional well casing, of a circulating head and closure for the upper end of the casing, comprising an annulus adapted to be connected with the casing by a casing joint or collar and of the same internal diameter as the casing, said annulus being perforated to accommodate pump connections, a cap or plate adapted to be fitted to and seated upon the annulus, and through which the drilling string is vertically reciprocated, securing means detachably uniting the annulus and the cap or plate, and said casing joint or collar exteriorly and detachably applied to said casing and said annulus.

"5. A detachable closure for a sectional well casing, having a tubular portion the internal diameter of which is the same as that of the casing; and detachable means applied exteriorily to the closure and the casing for detachably uniting the same, said tubular portion being provided with an opening accommodating pump connections.

"6. The combination, with a sectional well casing which is lowered section by section within the well as produced and is provided at its upper end with a casing joint or collar threaded upon the uppermost section; of an annulus adapted to be connected with the upper section of the casing by said casing joint or collar whereby the casing joint or collar separably overlaps the meeting ends of said upper section and said annulus and is threaded to both, said annulus being of the same internal diameter as the casing and being perforated to accommodate pump connections, a cap adapted to be fitted to and seated upon the annulus, and through which the drilling string is vertically reciprocated, and securing means detachably uniting the annulus and the cap."

The affirming decision of the Examiners in Chief is a ma-

jority decision, one of the three dissenting in the following language: "Appellant is clearly right and I agree with him."

The claimed invention is described as a "combination" in five of the six claims that have been rejected, and perhaps in the sixth claim as well, though it is not there in words so described.

The claims were rejected because, in the language of the Assistant Commissioner, the applicant is not seen to have done anything more than substitute for the admittedly old head attached to the upper of a series of casings the cap shown in the Bullock patent, to which references were made by both the Primary Examiner and Examiners-in-Chief, as well as a reference to letters patent granted to one Johnston, and he proceeds to say that the slight modification necessary to use the old coupling sleeve is well within the ordinary skill of the mechanic.

It is undoubtedly true that in the combination are to be found features covered by the Bullock and Johnston patents, but a careful consideration of the claims leads to the conclusion that while the applicant undoubtedly made use of certain features of the Bullock and Johnston inventions, yet what he has accomplished is a *new combination,* this taking the form of a sectional well casing string, circulating head or top, and standard joint or collar, which latter is always provided upon the casing sections as supplied for use. The circulating head is directly combined with the casing and its collar, and without any intermediate operation such as was necessary in the use of the Bullock invention.

The Bullock invention, as stated in his specification, was an invention relating to improvements in the art of rock-core drilling, and more especially to the method of withdrawing the core from a hole drilled or being drilled; and it consists, broadly and essentially, in withdrawing the core upwardly through the hollow drill tube, while the drill tube itself is allowed to remain in the hole either at work or at rest.

The claim of the appellant is that his invention relates to improvements in oil well apparatus, and particularly to apparatus utilized in drilling oil wells. Referring in his specification to

the process theretofore used for this purpose, he states, among other things, that "customarily, the entire means for capping or closing the top of the casing must be removed in substituting either of the types of caps above specified, one for the other; and, furthermore, the entire cap with its attaching means must be removed from the upper end of the casing to permit introduction or withdrawal of the drilling rig;" that his claimed invention "provides a closure or cap for the upper end of the casing which comprises separable members, one of which may remain permanently attached to the upper end of the casing, and the other of which may be removed at will, to permit the substitution of parts above referred to, or to permit the introduction or withdrawal of the drilling rig; there being provided means for detachably connecting the two members. The permanently attached member, or relatively permanently attached member, is formed for connection of pumping means, or liquid supply means, which are utilized to flush the well, in the drilling operation, for the purposes well understood in the art." He further states that "the invention consists in the novel provision, construction, combination, association, and relative arrangement of parts, members, and features," and these are definitely described in the claims which have been rejected.

While there are certain resemblances between the invention claimed by the appellant and that of the Bullock invention, it is, we think, clear that, bearing in mind the stated purposes of the invention claimed by the appellant, the Bullock invention could not have accomplished these purposes, and we do not think that the combination which is the subject of the appellant's claims is of a character which required mere mechanical skill to accomplish.

While the commercial success of a device does not constitute satisfactory evidence of patentability, the courts, including this court, have considered it in doubtful cases. The evidence on this point in the record is in the form of affidavits, and that of Charles E. Wilcox, after showing his long familiarity with the business of producing and developing oil wells and of supplying and inventing tools and appartus for use in connection with such

production and development, proceeds to state that, prior to the offer to the market and field of the Willard device "there had never been, to affiant's knowledge and belief, any apparatus of the same kind identical with or bearing any near resemblance in construction or function to the said apparatus or circulating head embodying the said invention, and that when said Willard circulating head or oil well apparatus was offered to the market and in the field, it immediately supplanted almost entirely all other devices theretofore devised and supplied in a vain attempt to do and perform what said Willard circulating head fully and completely and satisfactorily did and now does do and perform;" and he states, according to his best knowledge and belief, that others are now imitating the Willard device and placing such imitations upon the market.

This statement is something more than a mere statement of commercial success. It amounts to a statement that the invention does supply a real need which no other invention having the same purpose has accomplished, and it is at least worthy of remark that the Bullock invention, which the Patent Office tribunals insist is substantially the same device as that of the appellant, never seems to have been applied to the uses for which the appellant's device is intended, and which appears to have very successfully accomplished its purpose.

Counsel on behalf of the Commissioner of Patents in his brief urges that the appellant has admitted that the combination itself is old. We do not think that the language in the appellant's original specification goes as far as this. What he has set forth in his specification from which the counsel quotes is merely a statement of broad, general principles that were known and utilized in the drilling of oil wells, and it is not, as it seems to us, an admission by the appellant that his precise combination was old and well known when he devised the one that was the subject of his application.

The fact that a new combination involves the use of some elements, the subject-matter of previous inventions by others, does not in and of itself destroy the patentability of the combination, provided that the combination is "productive of a different re-

sult in the combined elements from that given by their separate parts. In other words, that the union of separate elements must produce something new." *Re* Eastwood, 33 App. D. C. 291, 299. There is other language of this Court in the *Eastwood Case* that is very applicable to the circumstances of this case.

We do not say that the question presented by this appeal is free from doubt, and it is notable that the claim of the appellant led to precisely an opposite conclusion by one of the Examiners-in-Chief from that reached by the others. He, in brief but emphatic language, declared that "appellant is clearly right and I agree with him." There being a doubt, we think that, following the doctrine more than once affirmed by this court, such doubt should be resolved in favor of the appellant. *Re Eastwood,* supra. This case but followed a ruling in an earlier case; and, in a later case, this court, speaking through Mr. Justice Van Orsdel, used language that is peculiarly applicable to the present case and to the contentions advanced on behalf of the Commissioner. Said the court: "It is easy to dispose of a case where the issue of invention is close, by holding that the advance over the prior art constitutes a mere mechanical change apparent to those skilled in the art. But, in the absence of proof to support this conclusion, and where the question of patentability is close, the doubt should be resolved in favor of the applicant." *Re Harbeck,* 39 App. D. C. 555, 561.

For the foregoing reasons, we are of opinion that the decision of the Assistant Commissioner of Patents should be reversed, and it is so ordered.                        *Reversed.*